UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                  Criminal Case No. 19-20333
v.                                Honorable Linda V. Parker

ANTOINE MARTEZ WHITE,

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

## Introduction

Defendant Antoine White stands charged with one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). The matter is presently before the Court on Defendant's motion to suppress evidence discovered after City of Detroit police officers David Garcia and Derrick King stopped Defendant for a traffic infraction on April 25, 2019. (ECF No. 19.) In addition to the Government's response, the Court held an evidentiary hearing on October 29, 2019, and received supplemental briefs from Defendant and the Government, with respect to the motion. For the reasons that follow, the Court is now granting Defendant's motion to suppress.

**Factual Background**

A video camera on the officers' scout car and their body cameras captured the traffic stop relevant to Defendant's motion. The Government filed the video recordings under seal (*see* ECF No. 26) and presented them as exhibits during the evidentiary hearing. Officers Garcia and King testified at the hearing.

This evidence established that on April 25, 2019, at about 12:30 p.m., Officers Garcia and King were on patrol in the Detroit's Sixth Precinct, where they were assigned to focus mostly on gangs, guns, robberies, and shootings. As the officers approached or were stopped at the intersection of Westwood Street and Kendall Street, they witnessed Defendant, who was riding a motor bike or minibike, fail to stop at a stop sign. The officers also noted that the motor bike was not equipped with turn signals or brake lights. Defendant does not contest the basis for the traffic stop.

The patrol car dashcam video reflects that Defendant kept his hands on the motorbike's handle bars when he first pulled over in response to the officers. Defendant then placed his hands in the air. The officers exited the patrol car and approached Defendant, with Officer Garcia on Defendant's left and Officer King on his right. As they approached, Officer Garcia instructed Defendant to turn off the motorbike, which Defendant did with his right hand. Defendant then returned his right-hand to the motorbike's handlebars.

Immediately upon reaching Defendant, Officer King began frisking Defendant. Officer White then asked Defendant if he had any identification on him and if he had "any pistols on [his] person." When Officer Garcia asked Defendant if he had identification, Defendant removed his right hand from the handlebar, but Officer King directed Defendant's hand back to the handlebar and then resumed frisking him. If Defendant indicated that he did or did not have identification, it cannot be heard on the recordings and the officers did not provide this information during their evidentiary hearing testimony.

Defendant informed the officers that he had just found a broken "two-five" (i.e., a type of handgun). Officer King then began to handcuff Defendant. Officer Garcia informed Defendant that he went straight through the stop sign and had to abide by the traffic rules while riding the scooter. Officer Garcia then asked Defendant where the firearm was located, and Defendant indicated that it was in his front left pocket. Officer Garcia retrieved the weapon, a .25 caliber Raven Arms P25. Officer Garcia asked Defendant if he was on probation or parole. Defendant answered no. Officer King then asked Defendant if he has a concealed pistols license. Defendant indicated he did not.

The officers arrested Defendant for carrying a concealed weapon without a license. According to the Indictment, Defendant previously had been convicted of

a crime punishable by more than one-year imprisonment, which rendered it unlawful for him to possess a firearm. (ECF No. 8.)

Officer Garcia testified at the evidentiary hearing that Defendant was compliant, did nothing to indicate that he intended to flee, and made no gestures suggesting that he was dangerous. Officer Garcia further testified that he did not believe Defendant was armed with a weapon when he approached him. When asked at the evidentiary hearing if Defendant made any gestures or suspicious movements, Officer King mentioned Defendant's movement of his hand toward his right pant leg pocket and testified that "in [his] experience dealing with individuals that carry weapons, they usually reach – it is a reaction for them to reach for it, to check to see where it is at, before you find it." Both officers indicated at the hearing that they did not know anything about Defendant before stopping him.

## Applicable Law and Analysis

## Whether the Search was Unconstitutional

The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons … against unreasonable searches and seizures." U.S. Const. amend. IV. A law enforcement officer's stop and frisk of a suspect—though potentially brief in duration—demonstrably infringes upon the suspect's liberty and thus constitutes a search and seizure for Fourth Amendment purposes. *See Terry v.*

4

*Ohio*, 392 U.S. 1, 16 (1968) ("[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person. And ... a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons is ... a 'search.' "). An officer may conduct a stop and frisk consistent with the Constitution "if two conditions are met." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009).

First, the investigatory stop must be lawful at its inception—i.e., justified by the requisite level of suspicion. *Id*. This requirement is satisfied when officers conduct a lawful traffic stop. *Id*. at 327 (explaining that the first condition—"a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation"). Second, before conducting a frisk, "the police officer must reasonably suspect that the person stopped is armed and dangerous." *Id*. at 326-27.

"The officer 'must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.' " *King v. United States*, 917 F.3d 409, 427 (6th Cir. 2019) (quoting *Sibron v. New York*, 392 U.S. 40, 64 (1968)). Whether there is reasonable suspicion to believe that an individual is armed and dangerous is an objective inquiry, *United States v. Noble*, 762 F.3d 509, 522 (6th Cir. 2014) (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968)), dependent upon the "totality of the circumstances." *Id*. at 522 (citing *Joshua v.*

5

*DeWitt*, 341 F.3d 430, 443 (6th Cir. 2003)).  Reasonable suspicion "requires more than a mere hunch."  *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006) (internal quotation marks omitted); *see also Ybarra v. Illinois*, 444 U.S. 85, 94 (1979) ("The 'narrow scope' of the Terry exception [to the Fourth Amendment's warrant requirement] does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked ….").

The Government maintains that the frisk of Defendant was lawful because he told the officers he had a weapon on his person—that being, the firearm he just found.  If Defendant's admission preceded the frisk, the Government's assessment would be correct.  *See United States v. Everett*, 601 F.3d 484, 495 (6th Cir. 2010) ("there has been widespread agreement … that officers conducting a traffic stop may inquire about dangerous weapons.").  The evidence undoubtedly shows, however, that Officer King began to frisk Defendant *before* Defendant answered Officer Garcia's question about whether he had any weapons on his person (and, in fact, before the question was even asked).

In response to Defendant's motion, the Government did not identify any circumstances—that is, other than Defendant's statement about having just found a handgun—suggesting that he was armed and dangerous.  Officer Garcia testified that he did not think Defendant was carrying a weapon when he and Officer King first approached him, and that Defendant did not make any gestures suggesting that

6

he might be dangerous or armed. While Officer King mentioned Defendant's hand movement, the video reflects that Defendant removed his hand from the motorbike's handlebar only after Officer Garcia asked him if he had identification. More importantly, Officer King had started to frisk Defendant before this movement happened. Therefore, Officer King's hearing testimony that Defendant's movement was "suspicious" seems to be an after-the-fact attempt to justify the unlawful frisk.

The Court also notes that the stop occurred in the middle of the day. *See United States v. Green*, 157 F. App'x 853, 856 (6th Cir. 2005) (citing cases finding the time of the stop—night or early morning hours—supportive of the officer's belief that an individual is armed and dangerous); *see also United States v. Blair*, 524 F.3d 740, 750-51 (6th Cir. 2008) (indicating that "[a] late hour can contribute to reasonable suspicion"). Defendant was wearing jeans and a hooded sweater, no outerwear. *See United States v. Reyes*, 349 F.3d 219, 224-25 (5th Cir. 2003) (finding that officer had reasonable belief that suspect might be armed and dangerous in part because the suspect was wearing a large jacket that might conceal a weapon); *United States v. Waldron*, 2 F. App'x 752, 754 (9th Cir. 2001) (fact that the suspect was wearing a jacket that could easily conceal a weapon relevant to support officers' belief that he was armed and dangerous). He stopped the motor bike as soon as the officers initiated the stop. And, as set forth above,

the video reflects that Defendant first put his hands in the air as the officers approached him; then he put his hands on the motorbike's handlebars, where they remained (except for the brief moment discussed above) until Officer King began to handcuff him.

For these reasons, as stated on the record at the evidentiary hearing, the Court concludes that the pat-down of Defendant following the traffic stop violated his Fourth Amendment rights.

## Whether Suppression is the Proper Remedy for the Unconstitutional Search

To deter law enforcement officials from violating the Fourth Amendment, the Supreme Court has broadly stated that "all evidence obtained by an unconstitutional search and seizure [is] inadmissible in federal court regardless of its source." *Mapp v. Ohio*, 367 U.S. 643, 654 (1961). So too is "evidence which police derivatively obtain from an unconstitutional search or seizure." *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008) (citing *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963); *Silverthorne Lumber Co. v. United Sta*tes, 251 U.S. 385, 392 (1920)). "This exclusionary rule is supplemented by the 'fruit of the poisonous tree' doctrine, which bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." *Id.*

The Supreme Court also has emphasized, however, that "even when there is a Fourth Amendment violation, this exclusionary rule does not apply when the

costs of exclusion outweigh its deterrent benefits." *Utah v. Strieff*, -- U.S. --, 136 S. Ct. 2056, 2059 (2016); *see also Hudson v. Michigan*, 547 U.S. 586, 591 (2006). "Suppression of evidence," the Court has stated, "has always been [its] last resort, not [its] first impulse." *Hudson*, 547 U.S. at 591. The Court therefore has advised that "exclusion may not be premised on the mere fact that a constitutional violation was a 'but-for' cause of obtaining evidence." *Id.* at 592. "[B]ut-for causality is only a necessary, not a sufficient, condition for suppression." *Id.*

In *Strieff*, the Court summarized the three exceptions to the exclusionary rule related to causation that it has recognized:

> First, the independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source. *See Murray v. United States*, 487 U.S. 533, 537, 108 S. Ct. 2529, 101 L.Ed.2d 472 (1988). Second, the inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source. *See Nix v. Williams*, 467 U.S. 431, 443-444, 104 S. Ct. 2501, 81 L.Ed.2d 377 (1984). Third … is the attenuation doctrine: Evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that "the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Hudson* … at 593, 126 S. Ct. 2159.

The Government appears to be asserting the applicability of all three exceptions to the present matter. The Court will address the inevitable discovery doctrine first.

9

The doctrine provides that evidence found in an unlawful search "may be admitted if the government can show that the evidence inevitably would have been obtained from lawful sources in the absence of illegal discovery." *United States v. Leake*, 95 F.3d 409, 412 (6th Cir. 1996) (citing *Nix*, 467 U.S. at 444). The Government maintains that Officers King and Garcia would have inevitably found the firearm on Defendant when arresting him for operating the motorbike without a valid driver's license and conducting a search of his person pursuant to that arrest. (Supp. Br. at 3 n.1, ECF No. 30 at Pg ID 207.) Officer Garcia testified that he checked whether Defendant had a valid driver's license and found that he did not. (10/29/19 Hr'g Tr. at 54, ECF No. 29 at Pg ID 152.) This testimony fails to demonstrate that the inevitable discovery doctrine applies.

First, it does not appear that Defendant was required to have a valid driver's license to operate the motorbike. *Compare* Mich. Comp. Laws § 257.312a(1) (requiring a person operating a *motorcycle* to have an operator's or chauffeur's license) *with id.* § 257.312a(2) (a person "operating *a moped upon a highway* shall procure a special restricted license" if he or she does not have a valid operator's or chauffeur's license) (emphasis added); *see also id.* § 257.32b (defining a moped). Even if Kendall Street is a "highway" under Michigan law, there is no evidence that Defendant lacked a special restricted license as opposed to a driver's license.

Moreover, neither of the officers testified that they would have arrested Defendant for operating the motorbike without a license.

Turning to the attenuation doctrine, the doctrine evaluates the causal link between the government's unlawful act and the discovery of the evidence sought to be suppressed. *Strieff*, 136 S. Ct. at 2061. This doctrine and the independent source doctrine are intertwined where an independent source is the intervening circumstance interrupting the causal connection between the unlawful conduct and discovery of the evidence. *See, e.g., Segura*, 468 U.S. 796, 799 (1984) (holding that a search warrant supported by evidence untainted by an unlawful "sweep" of the premises, is an independent source dissipating the taint of the unlawful conduct). The Supreme Court has identified three factors to guide courts in deciding whether evidence has been "come at by the exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Hudson v. Michigan*, 547 U.S. 586, 592 (2006); *see also Strieff*, 136 S. Ct. at 2062.

A court must first consider "the 'temporal proximity' between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search.'" *Strieff*, 136 S. Ct at 2062 (citing *Brown v. Illinois*, 422 U.S. 590, 603 (1975)). Next, the court assesses whether there were any intervening circumstances. *Id*. (citing *Brown*, 422 U.S. at 603-04). Lastly, the court analyzes " 'the purpose and flagrancy of the

11

official misconduct.' " *Id*. (quoting *Brown*, 422 U.S. at 604). This last factor is described as the "most important" or "most significant" because " 'it is tied directly to the rationale underlying the exclusionary rule, deterrence of police misconduct.' " *United States v. Shaw*, 464 F.3d 615, 630 (quoting *United States v. Reed*, 349 F.3d 457, 464-65 (7th Cir. 2003)); *see also Strieff*, 136 S. Ct at 2062. Applying these factors to the facts of this case suggests the uncovered evidence (the weapon and Defendant's statements) was "come at by exploitation of" the simultaneous illegal pat-down of Defendant.

The first factor favors suppression because Defendant's indication that he was carrying the firearm—the only justification for retrieving the weapon—came immediately after Officer King began unlawfully frisking or patting him down and while Officer King continued to do so. As the Supreme Court indicated in *Strieff*, it has "declined to find that this factor favors attenuation unless 'substantial time' elapses between an unlawful act and when the evidence is obtained." 136 S. Ct. at 2062 (quoting *Kaupp v. Texas*, 538 U.S. 626, 633 (2003) (per curiam)). No time elapsed here.

The second factor also favors suppression because there were no intervening circumstances. The Government argues that Officer Garcia's question was an intervening or independent source, but this is not the type of intervening action that typically supports attenuation. *See United States v. Ceccolini*, 435 U.S. 268, 279

(1978) (holding witness's testimony admissible because it derived from a police interview of her and was in no way connected to an illegal search of the defendant's business four months earlier); *Wong Sun*, 371 U.S. at 491 (holding the defendant's confession admissible, despite the fact that his arrest had been unlawful, because he made the statement upon voluntarily returning to the narcotics bureau several days after being lawfully arraigned and released on personal recognizance); *Pearce*, 531 F.3d at 382 n. 2 (holding that even if officer's stop of the defendant, who was on foot, was unlawful, search of the defendant's parked car was justified by a different officer observing a gun magazine in plain view in the car). The Sixth Circuit has described " 'the type of intervening events that serve to attenuate police misconduct [as] those that sever the causal connection between the illegal arrest and the discovery of the evidence.' " *Shaw*, 464 F.3d at 628-29 (brackets omitted) (quoting *Reed*, 349 F.3d at 464). An "independent source" may be an intervening circumstance; however, such sources must be " '*wholly independent of* any constitutional violation.' " *United States v. Leake*, 95 F.3d 409, 412 (6th Cir. 1996) (emphasis added) (quoting *Nix*, 467 U.S. at 443). The evidence must have been obtained by "means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). The Court cannot find complete independence or sufficient distinguishability where Defendant answered Officer Garcia's question *while* being

13

unlawfully frisked by Officer King. It has not been demonstrated to the Court that Defendant's admission about the weapon came about through his own free will as opposed to the pressure born upon him by the unlawful search.

Finally, the third factor also warrants suppression of the evidence in this case. The purpose and flagrancy of the officer's misconduct is not limited to situations where "the officer's actions were coercive or calculated to cause surprise, fright[,] or confusion." *Reed*, 349 F.3d at 465; *see also Shaw*, 464 F.3d at 630 (" 'purposeful and flagrant' misconduct is not limited to situations where the police act in an outright threatening or coercive manner …"). Instead, as the Sixth Circuit has explained, police officers act with an unlawful purpose when they perform an "investigatory" search, "that is, when officers unlawfully seize a defendant 'in the hope that something might turn up.' " *United States v. Williams*, 615 F.3d 657, 670 (6th Cir. 2010) (quoting *Brown*, 422 U.S. at 605); *see also Shaw*, 464 F.3d at 631 (noting that "*Brown* made it clear that the requisite 'quality of purposefulness' can be demonstrated when the [misconduct], in design and execution, is investigatory in nature"). The question courts must ask is "whether the actions were undertaken in an effort to advance the investigation or to embark on a fishing expedition in the hopes that it would lead to a confession or other useful evidence." *Reed*, 349 F.3d at 465.

It cannot be denied that police officers operating in high crime areas frequently and admittedly stop motor vehicles with African American occupants for traffic violations—including violations that would garner no police attention were the occupants of another race —as an excuse to search for illegal firearms. Notably, Officers Garcia and King were assigned specifically to a unit focusing on gangs, guns, robberies, and shootings when they stopped Defendant. This is precisely the type of "fishing expedition" that the exclusionary rule is meant to deter. The purpose of these stops is not to prevent whatever harm may be posed by the vehicular infractions. Instead, the stops in design and execution are investigatory in nature. The Court expects that such stops would cause an uproar if they happened routinely to Caucasian drivers and/or in affluent neighborhoods. As defense counsel argued at the evidentiary hearing, the Fourth Amendment should provide the same protections regardless of an individual's race or the community in which the stop occurs.

Applying these factors, the Court concludes that the evidence uncovered after Defendant was unlawfully searched was not sufficiently attenuated from the misconduct to render them admissible. The Court also cannot conclude that the evidence was obtained from an independent source or that it would have been inevitably discovered. All of the evidence (that is, the weapon and Defendant's statements) was obtained *after* the unlawful frisk. For that reason, the Court finds

15

it unnecessary to decide whether any evidence must be suppress due to the asserted violation of Defendant's *Miranda* rights.

Accordingly,

**IT IS ORDERED** that Defendant's motion to suppress is **GRANTED**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: November 20, 2019